<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| TRAP ROCK INDUSTRIES, INC., | : : | |
| Plaintiff, | : : | Civil Action No. 17-1098 (BRM)(LHG) |
| v. | : : : | **OPINION** |
| TEAMSTERS LOCAL 469 PENSION FUND, *et al.* | : : : | |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are (1) Plaintiff Trap Rock Industries, Inc.'s ("Trap Rock") Motion for Summary Judgment (ECF No. 15) and (2) Defendants Teamsters Local 469 Pension Fund (the "Fund") and the Board of Trustees of the Teamsters Local 469 Pension Fund's (the "Board") (together with the Fund, "Defendants") Cross-Motion for Summary Judgment (ECF No. 22). Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Trap Rock's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

Trap Rock brings this lawsuit pursuant to § 4221(b)(2) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), to vacate and modify an arbitrator's award. (Compl. (ECF No. 1) ¶ 1.) The Fund is a "multiemployer plan" as defined in § 3(37) of ERISA. (Trap Rock's Statement of Undisputed Material Facts (ECF No. 15-18) ¶ 1; Ds.' Resp. to Trap Rock's Statement of Undisputed Material Facts (ECF No. 21) ¶ 1.) Pursuant to a series of collective

1

bargaining agreements (the "CBAs") with Teamsters Local Union No. 469 (the "Union"), Trap Rock contributed to the Fund. (ECF No. 15-18 ¶ 2; ECF No. 21 ¶ 2.) The Trap Rock employees in the Union's bargaining unit voted to decertify the Union as their collective-bargaining representative. (ECF No. 15-18 ¶ 3; ECF No. 21 ¶ 3.)

Due to the decertification, on June 19, 2012, Trap Rock effected a "complete withdrawal" from the fund, as defined in § 4203(a) of ERISA. (ECF No. 15-18 ¶ 4; ECF No. 21 ¶ 4.) On September 13, 2012, Defendants sent Trap Rock a Notice and Demand for payment of withdrawal liability (the "Demand"), pursuant to § 4219(b)(1) of ERISA. (ECF No. 15-18 ¶ 5; ECF No. 21 ¶ 5.) The Demand assessed Trap Rock for withdrawal liability of $3,136,968.00 and presented an amortization schedule consisting of eighty (80) quarterly payments of $29,359.50. (ECF No. 15-18 ¶ 6; ECF No. 21 ¶ 6.) Pursuant to ERISA § 4219(c)(1)(C)(i), the withdrawal liability is paid in annual payments equal to the product of:

> (I) the average annual number of contribution base units for the period of 3 consecutive plan years, during the period of 10 consecutive plan years ending before the plan year in which the withdrawal occurs, in which the number of contribution base units for which the employer had an obligation to contribute under the plan is the highest, and
>
> (II) the highest contribution rate at which the employer had an obligation to contribute under the plan during the 10 plan years ending with the plan year in which the withdrawal occurs.

(ECF No. 15-18 ¶ 7 (quoting ERISA § 4219(c)(1)(C)(i)); ECF No. 21 ¶ 7.) Because the Fund's plan year ends on December 31, ERISA § 4219(c)(1)(C)(i) provides Defendants would determine Trap Rock's obligation by applying "'the highest contribution rate at which [Trap Rock] had an obligation to contribute under [the Fund]' during the ten year period beginning January 1, 2002 and ending December 31, 2012," (the "Measuring Period"). (ECF No. 15-18 ¶¶ 8-9 (quoting ERISA § 4219(c)(1)(C)(i)) (modifications in original); ECF No. 21 ¶¶ 8-9.)

2

During the Measuring Period, Trap Rock's required contribution rates to the Fund ranged from $1.00 to $3.75. (ECF No. 15-18 ¶ 10; ECF No. 21 ¶ 10.) At various times during the Measuring Period, Trap Rock performed work for government entities ("Prevailing Wage Work") subject to the New Jersey Prevailing Wage Act, N.J.S.A. §§ 34:11-56.25, *et seq.* ("NJPWA"). (ECF No. 15-18 ¶ 11; ECF No. 21 ¶ 11.) The NJPWA required Trap Rock to compensate employees who performed Prevailing Wage Work at specified minimum rates, which included a wage component and components for several fringe benefit categories, including pension benefits. (ECF No. 15-18 ¶ 12; ECF No. 21 ¶ 12.) The pension rates for the Prevailing Wage Work during the Measuring Period ranged from $3.585 to $6.785. (ECF No. 15-18 ¶ 13; ECF No. 21 ¶ 13.) Throughout the Measuring Period, the Prevailing Wage Work hourly rate for pension benefits was higher than the pension contribution rate set forth in the applicable CBA. (ECF No. 15-18 ¶ 14; ECF No. 21 ¶ 14.) The parties refer to the difference between the pension contribution rate set forth in the applicable CBA and the NJPWA-mandated rate for pension benefits as the "Additional Pension Compensation." (ECF No. 15-18 ¶ 15; ECF No. 21 ¶ 15.)

Whenever Trap Rock performed Prevailing Rate Work, it contributed to the Fund at the rates required for Prevailing Rate Work. (ECF No. 15-18 ¶ 16; ECF No. 21 ¶ 16.) Neither the CBAs nor the NJPWA required Trap Rock to contribute the Additional Pension Compensation to the Fund. (ECF No. 15-18 ¶ 17; ECF No. 21 ¶ 17.) Rather than contribute to the Fund, Trap Rock could have met its obligations under the NJPWA through other means, such as paying the Additional Pension Compensation as wages directly to the employees who performed Prevailing Wage Work. (ECF No. 15-18 ¶¶ 18-19; ECF No. 21 ¶¶ 18-19.)[1] The Fund calculated separate

---

[1] Defendants to not dispute this fact, but they argue if Trap Rock had elected to pay the Additional Pension Compensation as wages directly to the employees, Trap Rock would have incurred the additional expense of paying higher payroll taxes. (ECF No. 21 ¶ 19.)

rates for Trap Rock's contribution rates—one pursuant to the CBAs for Non-Prevailing Wage Work, and one for Trap Rock's obligations for Prevailing Wage Work. (ECF No. 15-18 ¶¶ 20-21; ECF No. 21 ¶¶ 20-21.) The Fund determined the highest contribution rate at which Trap Rock had an obligation to contribute to the Fund during the Measuring Period was $8.785, which consisted of $6.785 (the highest pension rate specified by the NJPWA for Prevailing Rate Work) plus an additional $2.00, which was an additional amount provided for in the default schedule set forth in the Fund's Rehabilitation Plan. (ECF No. 15-18 ¶ 22; ECF No. 21 ¶ 22.)

On December 7, 2012, Trap Rock submitted a timely Request for Review pursuant to ERISA § 4219(b)(2)(A). (ECF No. 15-18 ¶ 23; ECF No. 21 ¶ 23.) Trap Rock did not dispute the Fund's calculation of Trap Rock's present liability—$3,136,968—but challenged the Fund's calculation of the annual payment schedule. (ECF No. 15-18 ¶ 24; ECF No. 21 ¶ 24.) Trap Rock argued the Fund, when calculating the withdrawal liability, should not have included the contributions Trap Rock made to the Fund for Prevailing Rate Work. (ECF No. 15-18 ¶ 25; ECF No. 21 ¶ 25.) Trap Rock contended the Fund's use of the higher rate to calculate the withdrawal liability resulted in Trap Rock being assessed about $1 million more than it should have been assessed. (ECF No. 15-18 ¶ 26; ECF No. 21 ¶ 26.)

Defendants disagreed with Trap Rock's argument, and Trap Rock then timely initiated arbitration. (ECF No. 15-18 ¶¶ 28-31; ECF No. 21 ¶¶ 28-31.) The parties agreed upon John E. Sands ("the Arbitrator") as a mutually acceptable arbitrator. (ECF No. 15-18 ¶ 31; ECF No. 21 ¶ 31.) The Arbitrator conducted a hearing on July 25, 2016, and on January 19, 2017, the American Arbitration Association served the Arbitrator's Opinion and Award. (ECF No. 15-18 ¶¶ 33, 36; ECF No. 21 ¶¶ 33, 36.) The Arbitrator ruled in favor of Defendants, finding "[t]he Fund accurately calculated the annual payments due for Trap Rock's withdrawal liability in accordance with

ERISA § 4219(c)(1)(C)(i) by using a total contribution rate of $8.785." (Opinion and Award of John E. Sands, Impartial Arbitrator (ECF No. 15-16) at 10.)

Trap Rock filed the Complaint in this action. (ECF No. 1.) The parties then filed their Motions for Summary Judgment. (ECF Nos. 15 and 22.)

## II.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if

the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### III. DECISION

#### A. Standard of Review

Pursuant to 29 U.S.C. § 1401(b)(2), "any party to an arbitration proceeding can request judicial review . . . in an appropriate federal district court." *Crown Cork & Seal Co., Inc. v. Central*

*States Southeast and Southwest Areas Pension Fund*, 982 F.2d 857, 860 (3d Cir. 1992). The Third Circuit requires a district court to presume the arbitrator's factual findings are correct unless they are rebutted by a clear preponderance of the evidence. *Id.* (citing 29 U.S.C. § 1401(c)). The court must review an arbitrator's legal conclusions *de novo*. *Id.* In instances where the court reviews mixed questions of law and fact, the court must apply a "clearly erroneous" standard to factual findings and conduct plenary review of conclusions of law. *Id.* at 861 (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989)).[2] Mixed questions of law and fact are

> questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.

*Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982).

Here, the parties stipulated to the underlying facts. The only dispute between the parties, and the only dispute upon which the Arbitrator ruled, is whether Trap Rock's contribution to the Fund at the rate required for Prevailing Wage Work should be used to calculate Trap Rock's withdrawal liability. Therefore, the Court applies the clearly erroneous standard to the Arbitrator's findings of fact and reviews his legal conclusions *de novo*. *See Crown Cork & Seal Co*, 982 F.2d at 861 (citing *In re Sharon Steel Corp.*, 871 F.2d at 1222).

### B. The Parties' Motions for Summary Judgment

This is an issue of first impression. The parties agree Trap Rock's withdrawal liability must be calculated using "the highest contribution rate at which the employer had an obligation to contribute" during the Measuring Period. ERISA § 4219(c)(1)(C). The Arbitrator summarized the

---

[2] Defendants argue the Arbitrator "simply applied the law to the facts of the case," and the Court should therefore apply the clearly erroneous standard to his findings. (Ds.' Br. in Supp. of their Cross-Mot. for Summ. J. (ECF No. 22-2) at 12 (citing *Trustees of Iron Workers Local 473 Pension Trust v. Allied Prods. Corp.*, 872 F.2d 208, 211-12 (7th Cir. 1989)).) Defendants support their contention by citing Seventh Circuit precedent, which is not binding on this Court.

7

dispute between the parties as follows:

> The parties disagree what is "the highest contribution rate at which the employer had an obligation to contribute under the plan" during the . . . [M]easuring [P]eriod. Trap Rock insists that rate should be $5.75 ($3.75, the highest rate under its collective bargaining agreement with Teamster's [sic] Local 469, plus an additional $2 provided for in the default schedule of the Fund's Rehabilitation Plan). The Fund used $8.785 ($6.785, the highest rate specified by the [NJPWA] . . . , plus the additional $2 provided for in the default schedule of the Fund's Rehabilitation Plan).

(ECF No. 15-16 at 3.)

Trap Rock contends its payments to the Fund pursuant to the NJPWA did not constitute payments it "had an obligation to contribute" to the Fund, because "Trap Rock could have met its obligation to pay the Additional Pension Contribution through other means." (Pl.'s Br. in Supp. of its Mot. for Summ. J. (ECF No. 15-19) at 7.) Trap Rock contends, and Defendants do not dispute, it could have complied with its obligation under the NJPWA by paying the Additional Pension Compensation as wages to the employees who performed the Prevailing Rate Work. (*Id.*; ECF No. 21 ¶ 19.) Defendants argue, and the Arbitrator found, once Trap Rock elected to pay the Additional Pension Compensation by contributing to the Fund "Trap Rock became obligated under . . . the collective bargaining agreement and under Plan terms to continue making those contributions to the Fund." (ECF No. 15-16 at 8.) The Arbitrator reasoned, if Trap Rock failed to make its contributions before the withdrawal, the Fund could have filed a civil action pursuant to ERISA § 502 to enforce the contributions. (*Id.*) Therefore, the Arbitrator ruled, Trap Rock "had an obligation to contribute under the plan" under ERISA § 4219(c)(1)(C)(i). (*Id.*)

An "obligation to contribute" can arise in one of two ways: (1) from a collective bargaining agreement, or (2) "as a result of a duty under applicable labor-management relations law." *Bd. of Trustees of IBT Local 863 Pension Fund v. C & S Wholesale Grocers, Inc., Woodbridge Logistics,*

8

*LLC* (*Woodbridge Logistics*), 802 F.3d 534, 543-44 (3d Cir. 2015) (quoting 29 U.S.C. § 1392(a)). Here, the Arbitrator found Trap Rock's obligation arose from Article 14 of the CBA. (ECF No. 15-16 at 8.) Article 14 of the CBA provides:

> [Trap Rock] further agrees that when Federal or New Jersey State contracts provide for payment of prevailing wages that [it] will pay such wages as required therein and in addition on all jobs where the employer is the general contractor where all building and construction trades are being paid the prevailing building trades wages and conditions, [it] shall do the same. All money shall be paid in the payroll period in which they work.

(Collective Bargaining Agreement (ECF No. 15-3) at ¶ 14.) The Court finds the Arbitrator was correct in his conclusion that Article 14 of the CBA provided the basis for Trap Rock's obligation to contribute to the Fund. Trap Rock agreed in Article 14 to abide by prevailing wage law. Trap Rock agreed to abide by "the prevailing building trades wages and conditions." (*Id.*) Among the conditions of Prevailing Wage Work are the rates the NJPWA sets for pension contributions. (ECF No. 15-18 ¶ 12; ECF No. 21 ¶ 12.) The parties agree the "pension rates required for Prevailing Wage Work during the Measuring Period ranged from $3.585 to $6.785." (ECF No. 15-18 ¶ 13; ECF No. 21 ¶ 13.)

While Trap Rock is correct it could have discharged its obligation in the form of wages to the employees, once it chose to meet its obligation through contributions to the Fund, it had an obligation to pay the required Prevailing Wage Work pension rate. The Third Circuit has found there is an important distinction between contributions and contribution rates. *Woodbridge Logistics*, 802 F.3d at 544-45. In *Woodbridge Logistics*, the Third Circuit affirmed the district court's decision that a 10 percent surcharge on contributions to a pension fund should not be included in the employer's annual payment of withdrawal liability. *Id.* at 547. The Third Circuit reasoned the surcharges should not factor in the employer's annual payment because

"contributions are not to be conflated with contribution rates." *Id.* at 545.

Here, Defendants did not base their calculation of Trap Rock's withdrawal liability on the sum of Trap Rock's contribution made to the Fund pursuant to Prevailing Wage Law. Rather, Defendants based the calculation on the "*pension rates required* for Prevailing Wage Work during the Measuring Period." (ECF No. 15-18 ¶ 13; ECF No. 21 ¶ 13 (emphasis added).) The parties contemplated Trap Rock's obligations under Prevailing Wage Law in Article 14 of the CBA. The parties also acknowledge Prevailing Wage Law dictated the rate at which Trap Rock contributed to the Fund. Therefore, the Court finds "the highest contribution rate at which [Trap Rock] had an obligation to contribute" during the Measuring Period was $8.785.[3]

Therefore, Trap Rock's Motion for Summary Judgment is **DENIED**, and Defendants' Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Trap Rock's Motion for Summary Judgment (ECF No. 15) is **DENIED**, and Defendants' Motion for Summary Judgment (ECF No. 22) is **GRANTED**. An appropriate Order will follow.

**Date: June 20, 2018**                         */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**

---

[3] Because the Court finds the CBA was the basis of Trap Rock's obligation to contribute to the Fund, it need not address whether the NJPWA is an "applicable labor-management relations law" that could give rise to an obligation to contribute. *See* 29 U.S.C. § 1392(a)